IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE:<br><br>NEWPORT 222 MITCHELL STREET, L.P.,<br><br>Debtor. | CHAPTER 7<br><br>CASE NO. 24-54060-SMS |

## BI 68 LLC'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA

BI 68 LLC ("BI 68") files this Reply in support of its Motion to Quash the subpoena served on it by Balfour Beatty Construction LLC ("Balfour") and for a protective order filed at Docket Entry 46 on June 20, 2025 (the "Motion").

Balfour's requests in the Subpoena[1] seek documents in two categories: (1) documents Balfour already requested and BI 68 already produced in connection with the Fulton Action[2] or Gwinnett Action, and (2) discovery related to BI 68's exercise of its power of sale and foreclosure of its collateral. For both categories, cause exists to grant the Motion.

More generally, cause also exists because of the pending proceeding that Balfour has now recommenced against BI 68 in Fulton Superior Court (the "Renewed Fulton Action"), which it commenced days after it served BI 68 with the Subpoena. Notably, Balfour never disclosed the Renewed Fulton Action to counsel for BI 68, despite multiple opportunities to do so (including during the parties meet and confer session),[3] and only yesterday disclosed it to this Court.

---

[1] A copy of the subpoena (the "Subpoena") is attached as Exhibit 2 to *Balfour's Motion for an Order Pursuant to Bankruptcy Rule 2004 Authorizing Examination of BI 68 LLC and Directing the Production of Documents*, D.E. 37.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

[3] Balfour accuses BI 68 of bad faith in the meet and confer. As set forth below, this is factually and legally unsupported. And, by failing to disclose this known material fact during the meet and confer, itself engaged in substantial bad faith conduct.

Balfour is attempting to use the Subpoena to secure (1) the exact same discovery it has already received and (2) discovery that it could not otherwise get in the Fulton Action, Gwinnett Action, or now the Renewed Fulton Action. This is exactly the type of harm that the pending proceeding rule is designed to prevent.

### *Balfour's Renewed Fulton Action*

1. Balfour served BI 68 with the Subpoena on June 6, 2025, when counsel for BI 68 consented to accept service of the Subpoena by email. The following Wednesday, June 11, 2025, unbeknownst to BI 68, Balfour refiled its complaint against BI 68 in Fulton Superior Court (the "Complaint").[4] The substance of the Complaint in the Renewed Fulton Action is largely similar to the Second Amended Complaint in the Fulton Action that Balfour voluntarily dismissed, other than Balfour's removal of any fraud claims against BI 68 which had previously been dismissed by the Fulton Superior Court.[5]

2. Though Balfour's counsel had previously engaged with BI 68's counsel and was with BI 68's counsel at the deposition of the Debtor's representative, Mr. Kevin Murphy, the very same day Balfour filed the Complaint, Balfour never disclosed the Complaint.

3. The following week, on June 20, 2025, counsel for BI 68 met and conferred with counsel for Balfour in good faith by Microsoft Teams Meeting regarding the Subpoena and BI 68's forthcoming Motion. During the conference, BI 68 explained to Balfour that it was seeking to improperly re-litigate a claim against BI 68 in this bankruptcy case (as Balfour itself acknowledged

---

[4] *Balfour Beatty Construction, LLC v. BI 68 LLC*, Superior Court of Fulton County, Civil Action No. 25-CV-007915, D.E. 1.

[5] The Fulton Superior Court dismissed Balfour's fraud claim against BI 68. On May 6, 2024, Balfour filed a motion to reconsider the Court's dismissal of the fraud claim, which the Fulton Superior Court denied. Motion ¶ 12. The Complaint does contain allegations of fraud like those the Court previously dismissed, this time masquerading as a partial basis for declaratory judgment.

2

through counsel).[6] As such, counsel for BI 68 requested that Balfour withdraw the Subpoena.[7] During the meet and confer on June 20, 2025, counsel for Balfour never disclosed the Complaint to counsel for BI 68.

4.     BI 68's counsel did not become aware of the Complaint until June 30, 2025, when counsel received communication from BI 68's previous owner who Balfour improperly served with the Complaint. On July 21, 2025, BI 68 contacted counsel for Balfour to alert Balfour that it had served the wrong registered agent with the Complaint but agreed to accept service. A copy of the communication between counsel for BI 68 and counsel for Balfour is attached hereto as **Exhibit A**.

5.     The following day, July 22, 2025, Balfour responded to BI 68 stating that even though it had commenced the Renewed Fulton Action, Balfour had every intent to pursue broad Rule 2004 discovery in this Court and had only filed the Renewed Fulton Action to "preserve" its position. The following is the email sent by Balfour's counsel sent to counsel to BI 68:

---

[6] Motion at ¶ 22.

[7] In Balfour's response to the Motion, D.E. 48 (the "Response"), Balfour cites to *Ohai v. Delta Cmty. Credit Union (In re Ohai)*, Nos. 12-65475-WLH, 23-5041-WLH, 2024 Bankr. LEXIS 157 (Bankr. N.D. Ga. Jan. 23, 2024) asserting that BI 68 conferred with Balfour in bad faith on June 20, 2025. But the court in *Ohai* was considering a motion to compel discovery pursuant to Rule 7037 which incorporates Federal Rule of Civil Procedure 37. *Ohai*, 2024 Bankr. Lexis 157 at *6. Here, the Court is deciding a motion to quash a Subpoena issued under Rule 2004. Moreover, in *Ohai*, the plaintiff never provided a certification of his efforts to meet and confer. *Ohai*, 2024 Bankr. Lexis 157 at *9. And that was because the plaintiff never actually conferred with the defendant on the motion to compel. *Ohai*, 2024 Bankr. Lexis 157 at *9. Here, counsel for BI 68 conferred with counsel for Balfour to explain the merits of BI 68's objection to the Subpoena and its request that the Subpoena be withdrawn and certified to the same. *Ohai* is inapposite.

3

| | |
|---|---|
| From: | Kevin Hudson <khudson@hlpwlaw.com> |
| Sent: | Tuesday, July 22, 2025 7:43 AM |
| To: | James B. McClung |
| Cc: | Heuer, John; Zack Hall; Fay Slaveikis |
| Subject: | RE: Balfour v. BI 68 |

James:

We are willing to extend the time to answer as necessary so that your client can avoid unnecessary expense. The bankruptcy matter involves significantly different and broader concepts involving your client than are asserted in the state case. *See generally* your client's prior objections to any effort to evaluate the foreclosure or guarantee obligations. The state case was refiled merely to preserve Balfour's position. The bankruptcy matter is ongoing, and we need clarity on that case before putting significant effort into the state matter. Please advise if you would be willing to enter into an extension on the time to answer of 90 days, and we can reassess after that point.

Best.

Indeed, Balfour even admits that it does not intend to make significant efforts in the Renewed Fulton Action until it had resolved Rule 2004 discovery in this bankruptcy case.[8]

### *Balfour's Subpoena Falls Squarely in the Pending Proceeding Rule*

6. As previously noted in the Motion, the well-recognized pending proceeding rule of Rule 2004 discovery is that once a lawsuit is commenced, discovery should be pursued under the applicable civil discovery rules, not Rule 2004. "Once an adversary proceeding is commenced, the Federal Rules of Civil Procedure, applicable to Bankruptcy Courts in accordance with the Federal Rules of Bankruptcy Procedure, govern the discovery process. *Simms v. Deutsche Bank Nat'l Tr. Co. (In re Simms)*, No. 11-86981-MGD, 2012 Bankr. LEXIS 3264, at *3 (Bankr. N.D. Ga. May 10, 2012). Though already implicated and applicable at the time the Motion was filed, the pending proceeding rule squarely applies now because Balfour filed the Renewed Fulton Action just five days after serving BI 68 with the Subpoena.

7. Under the pending proceeding rule, Balfour cannot seek broader discovery than is authorized in the Renewed Fulton Action. But Balfour's Complaint makes plain, that is precisely

---

[8] *See* Exhibit A, p. 1.

4

Balfour's intent. Now through Rule 2004, Balfour is seeking discovery related to a subordination letter agreement (at the heart of Balfour's claims in the Fulton Action and the Renewed Fulton Action) that BI 68 already fully produced, and discovery related to BI 68's exercise of its power of sale and foreclosure of its collateral which Balfour cannot pursue in the Fulton Action or the Renewed Fulton Action because it is not germane in any way to Balfour's claims. This is *exactly* the kind of strategic discovery tactic that the pending proceeding rule is intended to thwart.

8.  Nor is Balfour using Rule 2004 as a "pre-litigation" device as contemplated by the court in *In re Wash. Mut., Inc.*, 408 B.R. 45, 53 (Bankr. D. Del. 2009). Balfour filed two separate civil actions – one against the Debtor and one against BI 68 – and has pursued those claims for years.[9] Balfour further had the opportunity to conduct depositions during multiple extensions of the discovery period in the Fulton Action meant largely to give Balfour the opportunity to examine BI 68's corporate representative between August 2024 and December 2024.[10] Instead of doing so, Balfour voluntarily dismissed the Fulton Action just three days before the end of the discovery period.[11]

9.  Having fully complied with discovery in the Gwinnett Action and the Fulton Action, BI 68 should not be prejudiced with the burden of proving, for a second time and third time, that all its prior productions to Balfour satisfy renewed requests for the same discovery in this Court. Nor is it this Court's charge to opine on previously settled discovery in matters proceeding before a state court.

---

[9] Motion ¶ 61.

[10] Balfour's characterization of discovery in the Fulton Action is disingenuous in stating that "prior discovery was so limited that BI 68 was not even subject to a deposition." Response at ¶ 28. In total, the discovery period in the Fulton Action lasted over a year.

[11] Motion ¶¶ 20-21.

5

10. Moreover, as it relates to any potential discovery through Rule 2004 related to BI 68's exercise of its power of sale and foreclosure of collateral, there is nothing for Balfour to gain in investigating the public foreclosure sale. After BI 68 publicly noticed the foreclosure sale for multiple weeks in Fulton County's official organ on all property securing the BI 68 loan and cried the foreclosure sale on the steps of the Fulton Superior Court, no party other than BI 68 appeared and bid on the collateral. That fact does not support any allegations of collusion when BI 68 properly noticed the foreclosure to the general public – by design, there is no possible collusion that could have prevented potential bidders from participating in the public foreclosure sale.

11. Balfour knows all of this. To try to manufacture alleged controversy, it resorts to misrepresentation of material facts to the Court. Its first misrepresentation appears at Paragraph 14 of its Response. Balfour states that the Debtor's principal "executed several deeds in lieu of foreclosure transferring other properties to BI 68, ***each of which secured the cross collateralized debt of BI 68***." The highlighted language is false and Balfour knows it. BI 68 accepted no deeds in lieu on any properties against which it held loans. Certain affiliates of BI 68's parent (SoDo Lender Holdco, LLC ("SoDo"))[12] accepted deeds in lieu related to other properties that were not collateral for the BI 68 loan. BI 68 has never accepted a deed in lieu on any property against which it made a loan. ***BI 68 foreclosed on every property securing the debt owed by the Debtor and its co-borrowers through a public foreclosure process.*** Attached hereto as **Exhibit B** are the

---

[12] BI 68's ownership – and the timing of change of that ownership – is directly relevant to other misrepresentations that Balfour makes in its Response. BI 68's original owner is an entity known as "BridgeInvest" (hence the "BI" in BI 68's name). BridgeInvest agreed to sell its ownership stake in BI 68 to SoDo on November 22, 2023 and actually closed on the sale on December 28, 2023. Prior to the sale, BridgeInvest had caused BI 68 to commence foreclosure proceedings that were scheduled to close on January 2, 2024 ("Foreclosure #1"). Foreclosure #1 concluded on January 2, 2024, but the Debtor's property was not the subject of Foreclosure #1. Upon acquisition of BI 68, SoDo later caused BI 68 to notice a separate foreclosure proceeding for the Debtor's property (which ultimately closed on March 5, 2024) ("Foreclosure #2"). The foreclosure proceeding that Balfour is seeking to investigate in this case is Foreclosure #2, *not Foreclosure #1 which did not include the Debtor's property*.

6

publisher's affidavits in connection with the foreclosure on every property collateralizing the BI 68 loan. *BI 68 accepted no deed in lieu of foreclosure on any property securing the BI 68 loan. Rather, BI 68 cried each foreclosure sale on the steps of the Fulton Superior Court after publicly noticing each sale. Notably, Balfour chose not to appear or bid.*

12. Balfour also tries to manufacture controversy by artfully obfuscating Foreclosure #1 and Foreclosure #2 in a deceptive fashion. At Paragraph 15, Balfour states as follows:

> Even more troubling, Mr. Murphy [the Debtor's representative at its Rule 2004 deposition] confirmed that BI 68 was attempting to manipulate the process to prevent other interested parties from acquiring the Debtor's property. It seems clear from the record developed to date that BI 68 was working with the Debtor (and its guarantor) to acquire not just the Debtor's property, but also the entirety of the South Downtown development without any of those assets being exposed to the market.

Balfour attaches an October 31, 2023 email in supposed support of this assertion that was introduced at Mr. Murphy's deposition. **The problem is that the October 31, 2023 email does not relate to the foreclosure process at issue here**. The foreclosure referenced in the October 31, 2023 email was Foreclosure #1 (which, as a result of a temporary restraining order in the Fulton Action that was eventually lifted, did not include the Debtor's property), *not Foreclosure #2* (which is the relevant foreclosure that Balfour claims it wants to investigate here). "The group" that Mr. Murphy references in his October 31 email is SoDo, which later closed on the purchase. After closing, SoDo caused BI 68 to commence Foreclosure #2. Foreclosure #2 was done through a public foreclosure process (as was Foreclosure #1). There was nothing to "manipulate" (as Balfour suggests) in either Foreclosure #1 or Foreclosure #2 because it was an open and public process. Balfour's obfuscation is made clear by looking at the recipient of the email (Trent Williams, a BridgeInvest employee, not a SoDo employee) and the date of the email (which was three weeks before SoDo agreed to acquire BI 68 and eight weeks before it actually did).

7

13. This obfuscation is intentional by Balfour. These facts are crystal clear in Mr. Murphy's testimony adduced by Balfour's counsel. Attached hereto as **Exhibit C** is a true and correct excerpt of pages 218 (starting at line 8) through 223 (ending at line 20) of that testimony. This is the relevant testimony where Mr. Murphy makes clear that, at the time of the October 31 email BridgeInvest owned the property, was looking to foreclose, and was considering a sale of the loans (which ultimately became a sale of the lender) to affiliates of SoDo.

### *Balfour's Other Mischaracterizations to this Court*

14. Balfour's Response is replete with other false statements and mischaracterizations. A few, however, stand out because they implicate questions of its candor towards this tribunal. At Paragraph 44, Balfour seeks to leave the Court with the impression that it is working in coordination with the Trustee or otherwise with his support.[13] For instance, Balfour represents that "the Trustee supports the efforts by Balfour since additional discovery may be beneficial to the Estate." After reviewing this, counsel to BI 68 spoke with counsel to the Trustee and sent a follow up email asking about this assertion. A true and correct copy of that email (and Trustee's counsel's response is attached as **Exhibit D**). When asked about Balfour's statement that the Trustee "supported" Balfour's efforts, Trustee's counsel stated as follows: ***"Balfour has not solicited Trustee's support for its Rule 2004 discovery. As a result, there are no such communications or conversations to disclose."***

15. Similarly, also at Paragraph 44, Balfour represents to this Court that "Balfour is acting to assist the Trustee in investigating the financial affairs and assets of the Debtor…" When BI 68's counsel posed questions about this assertion to Trustee's counsel, Trustee's counsel

---

[13] Were this correct, which it is not, it would potentially implicate other serious questions about the administration of the estate and the disclosure of that administration to this Court and creditors.

8

responded as follows: ***"Trustee has not sought Balfour's assistance in investigating the financial affairs and assets of the Debtor.  Moreover, Balfour has not offered to directly assist Trustee in his investigation of the financial affairs and assets of the Debtor."*** *See* Exhibit D.

\*        \*        \*

Days after serving the Subpoena in this case, Balfour chose to litigate its claims in Fulton Superior Court and should be limited to the scope of discovery imposed in the Renewed Fulton Action. Because the concerns that animate the pending proceeding rule are relevant here, the Court should grant this Motion, quash the Subpoena, and grant a Protective Order.

Dated: July 29, 2025

                                  **ALSTON & BIRD LLP**

*/s/ William S. Sugden*
William S. Sugden (Georgia Bar No. 690790)
Michael H. Shanlever (Georgia Bar No. 141292)
Arabella Okwara (Georgia Bar No. 542422)
Kennedy R. Bodnarek (Georgia Bar No. 623383)
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
Phone: 404-881-7000
Fax: 404-881-7777
Email: will.sugden@alston.com
       mike.shanlever@alston.com
       arabella.okwara@alston.com
       kennedy.bodnarek@alston.com

*Counsel for BI 68 LLC*

9

## *CERTIFICATE OF SERVICE*

I hereby certify that on this day, I caused to be served true and correct copies of the foregoing Reply in Support of the Motion to Quash by filing such notice with the Court's CM/ECF system.

By: */s/ William S. Sugden*
William S. Sugden