IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IN RE:

NEWPORT 222 MITCHELL STREET, L.P.,

Debtor.

CHAPTER 7

CASE NO. 24-54060-SMS

## BI 68, LLC'S OPPOSITION TO MOTION TO COMPEL TRUSTEE TO PRODUCE INFORMATION

BI 68, LLC ("BI 68") files this opposition to Balfour Beatty Construction LLC's ("Balfour") *Motion to Compel Trustee to Produce Information* (the "Motion to Compel") [D.E. 61]. The Motion to Compel is a further extension of Balfour's attempts to leverage bankruptcy discovery tools to further its narrow self-interest in separate state court litigation against BI 68. When BI 68 filed its Motion to Quash Balfour's subpoena, it pledged to cooperate with the chapter 7 trustee (the "Trustee") – a neutral, independent third party – to allow him to investigate whatever claims he thought appropriate.

BI 68 followed through and then some. It fully responded to all of the Trustee's document requests, sometimes within hours, and did not assert a claim of privilege over any of the documents requested. It volunteered other documents to the Trustee (without being specifically requested to do so). It prepared a 29-slide presentation to provide targeted factual background, presented it at a multi-hour sit down meeting with the Trustee and his counsel (with principals and multiple lawyers in attendance), fully answered every question posed by the Trustee and his counsel at that meeting, and provided a tour of the South Downtown development to help the Trustee understand how the 222 Mitchell property fits within the larger development.

1

BI 68's cooperation has been exemplary.  After reviewing these materials – and whatever materials he may have received from Balfour[1] – the Trustee determined not to pursue claims against BI 68 (and the Court thereafter granted BI 68's Motion to Quash).  Behind a mask of alleged concern about whether the Trustee can adequately do his job (*see* Motion to Compel ¶ 9 "Balfour's concern is that the Trustee … may not have sufficient background knowledge to fully evaluate the information produced by BI 68…"), Balfour now seeks to get through the backdoor (via its Motion to Compel) what it couldn't get through the front door of its subpoena.  Balfour's justification is pretextual.  It provides no evidence to support its assertions that the Trustee does not have "sufficient background" (and, notably, the Trustee himself has raised no similar concerns).  Nor does it explain why the Trustee would need their further (and, on information and belief, unrequested) support approximately eight months into the Trustee's investigation.  Section 704(a)(7) specifically permits this Court to enter an order to stop this charade.  Doing so is warranted here and will help further the important goal of encouraging parties like BI 68 to cooperate fully with independent trustees in the future.

### Factual History

1.      The facts related to the Debtor and this bankruptcy case are straightforward.  The Debtor, Newport 222 Mitchell Street, LLP, is a single-asset entity that owned a parcel of real property located at 222 Mitchell Street SW, Atlanta, Georgia, which it intended to develop.  BI 68 was the Debtor's secured lender.  The Debtor engaged Balfour to do contracting work.

2.      Balfour agreed to subordinate its lien rights to BI 68, which allowed the Debtor to borrow millions of dollars from BI 68, the vast majority of which was used to pay Balfour.  After

---

[1] BI 68 understands that the Trustee has entered into a confidentiality agreement with Balfour that is similar to the one he entered into with BI 68 and that Balfour has similarly cooperated with the Trustee in production of documents.

2

the Debtor defaulted, BI 68 commenced a non-judicial foreclosure action in accordance with its rights under its loan documents. Although the Debtor had paid Balfour millions of dollars at that time, Balfour alleges it is owed millions more. Balfour had full knowledge of the foreclosure and unsuccessfully tried to stop it through an injunction action it filed in Fulton Superior Court. It thereafter declined to participate in the foreclosure proceeding itself (it could have, for instance, bid for the property). Instead, it chose to continue its litigation in separate actions against the Debtor and BI 68.

3.      This Court is now the fourth venue through which Balfour is attempting to pursue recovery on its debts. It previously filed claims against the Debtor in Gwinnett County Superior Court, styled *Balfour Beatty Construction, LLC v. Newport 222 Mitchell Street, LP, et al.*, Civil Action No. 23-A-05346-2, during which BI 68 produced thousands of pages of documents in response to Balfour's non-party discovery requests. Balfour next sought to enjoin BI 68's foreclosure and to litigate lien priority issues in Fulton County Superior Court, styled *Balfour Beatty Construction, LLC v. BI 68, LLC*, Civil Action No. 23CV388281; the parties were approximately three days from completing discovery when Balfour voluntarily dismissed the action without prejudice. Thereafter, Balfour renewed its claims against BI 68 in Fulton County Superior Court, styled *Balfour Beatty Construction, LLC v. BI 68, LLC*, Civil Action No. 25CV007915.[2] This case is ongoing. Lastly, Balfour sought—and continues to seek—discovery before this Court.

4.      On June 20, 2025, BI 68 filed a *Motion to Quash Subpoena* (the "Motion to Quash") [D.E. 46] in response to a subpoena Balfour served on BI 68 following this Court's entry of an *Order Granting Motion for an Order Pursuant to Bankruptcy Rule 2004 Authorizing Examination*

---

[2] Balfour has twice attempted to move its state court case against BI 68 to Fulton County Business Court and those efforts have failed both times Balfour attempted them.

*of BI 68, LLC and Directing the Production of Documents* (the "2004 Order") [D.E. 40].  BI 68

filed the Motion to Quash specifically to prevent Balfour from using this Court and the bankruptcy

process as a vehicle to aid its discovery efforts in a case before another court.  However, BI 68

made clear that it had nothing to hide from the neutral, independent trustee and was prepared to

cooperate fully with any investigation that the Trustee might choose to conduct.  *See* Transcript of

Hearing on Motion to Quash Subpoena at 7, *In re* Newport 222 Mitchell Street, LLP., No. 24-

54060 (Bankr. N.D. Ga. July 30, 2025) ("We have a fiduciary for the estate that is prepared to

investigate it. You have a party in BI 68 that's prepared to cooperate with him . . .").

5.      At the July 30, 2025 hearing, the Court deferred further action on the 2004 Order

and the Motion to Quash to permit the Trustee to conduct his own investigation into Balfour's

asserted allegations concerning the foreclosure and related transactions.  The Court made clear at

that time that the Trustee and his counsel were fully equipped to conduct an investigation. *Id*. at

23 ("[T]he types of potential estate causes of action that we are talking about are [] very squarely

within the wheelhouse of the Chapter 7 Trustee and his counsel.").

6.      Following the hearing, BI 68 took affirmative steps to assist the Trustee.  First, it

entered into a confidentiality agreement with the Trustee, which governed (and governs) all

information that BI 68 produced to the Trustee.  Thereafter, in mid-August 2025, it hosted a

meeting with the Trustee and his counsel for several hours and presented a deep factual and legal

overview of the issues that the Trustee identified were of primary interest.  BI 68 representatives

also gave the Trustee and his counsel a tour of the development, which is a complicated patchwork

of nearly 60 buildings (many of them historic landmarks) across 16 acres in south downtown

Atlanta, which had been pledged from different borrowers to different lenders for different loan

facilities.[3]  Understanding this was critical because of Balfour's misrepresentations to the Court (and the Trustee) concerning which parcels had been acquired via a deed in lieu and which had been acquired through public foreclosure.  *See,.e.g,,* Balfour Beatty Construction, LLC's Objection and Response to BI 68, LLC's Motion to Quash Subpoena at 6, *In re* Newport 222 Mitchell Street, LLP., No. 24-54060 (Bankr. N.D. Ga. July 28, 2025).

7.      Following that initial meeting, BI 68 voluntarily produced to the Trustee all documents BI 68 relied upon in putting together the presentation to the Trustee.  Over the coming months, the Trustee made targeted follow-up document requests to BI 68.  BI 68 fully complied with those document requests, sometimes within hours of the Trustee making them.  BI 68 also facilitated conversations between the Trustee's counsel and an employee of a BI 68 affiliate, all without requiring a formal discovery process.

8.      On February 25, 2026, after the Trustee informed Balfour that he would not pursue any claims against BI 68, Balfour sent a written demand (the "Demand Letter") to the Trustee seeking production of "copies of any and all documents, files, records, and papers of the Trustee related to or received from BI 68, LLC."  The Demand Letter further stated that Balfour "reserve[d] all rights upon review of these records to contest the adequacy of the production made by BI 68 in response to the subpoena initially issued by [Balfour]."  Motion to Compel, Exhibit A.

9.      Balfour made no effort to explain or justify its purported "reservation of rights," its supposed right to be able to "contest" the adequacy of the BI 68 production, or its assertion that BI 68 must produce documents to the Trustee "in response to" Balfour's subpoena.  But these turns of phrase expose Balfour's true motivations.  Its focus is *not* on being "furnish[ed] such information concerning the estate and the estate's administration" as is contemplated by section

---

[3] BI 68's loan to the Debtor was cross-collateralized against certain, but not all, properties that compose the South Downtown development.

704(a)(7).  Instead, Balfour is attempting to force the Trustee to enforce Balfour's now-quashed subpoena, while threatening to impose the costs of its purported "contest" onto an administratively insolvent bankruptcy estate.

10.      These threats and demands are untethered to section 704(a)(7).  To be clear (and as BI 68 set out in its Motion to Quash), Balfour's now quashed subpoena was wildly overbroad.  The Trustee recognized as much in not simply making the identical demands on BI 68 in his requests. BI 68 responded (fully) to the Trustee's requests, which were tailored and appropriate.  Balfour's current efforts are focused on roping the Trustee into its campaign of discovery harassment.  In its own words, it now seeks to second guess the Trustee's investigation,[4] while trying to force BI 68 to "respond to" Balfour's subpoena, as it prepares to "contest" the scope of BI 68's production to the Trustee.  Motion to Compel, Exhibit A.  In other words, Balfour is trying to co-opt a tool intended to allow creditors to be "furnished" with information by a trustee concerning the "estate's administration" into a full-scale investigative tool for Balfour's own litigation purposes.

11.      On February 26, 2026, the Court held a hearing regarding the Trustee's investigation and BI 68's Motion to Quash.  At the hearing, the Trustee advised that he had completed his investigation and determined not to pursue claims against BI 68.  Based on the hearing, the Trustee's investigation, his determination not to pursue claims, and the reasons stated on the record, the Court granted BI 68's Motion to Quash. The Court entered an Order memorializing the ruling on March 4, 2026 [D.E. 62].

---

[4] *See* Motion to Compel, ¶ 9 ("Balfour's concern is that the Trustee, who has much more limited background information, may not have had sufficient background knowledge to fully evaluate the information produced by BI 68 to ensure that all relevant documentation was produced.").

12.     The Trustee declined to produce the materials requested by Balfour in the Demand Letter, explaining that they were obtained from BI 68 pursuant to a confidentiality agreement.  The Motion to Compel followed.

**Argument and Citation of Authority**

**A.  Disclosure Under Section 704(a)(7) Is Subject to Judicial Control and Fiduciary Limits**

13.     Section 704(a)(7) requires that a "trustee shall . . . unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest."[5]  11 U.S.C. § 704(a)(7).  Although the trustee's disclosure obligation under section 704(a)(7) is "broad and extensive," courts repeatedly emphasize that it is "not, however, unlimited."  *In re Pearlstein*, No. 17-32770-THP7, 2022 WL 1492236, at *2 (Bankr. D. Or. May 11, 2022) (citing *In re Refco Inc.*, 336 B.R. 187, 193 (Bankr. S.D.N.Y. 2006)).  The statutory text itself makes clear that disclosure is subject to judicial restraint—"unless the court orders otherwise"—and thus vests the Court with discretion to limit disclosure when countervailing considerations warrant.  *See In re Grabill Corp.,* 109 B.R. 329, 333 (N.D.Ill.1989) ("[T]he duty to provide information under section 704(7) is not unlimited [] as is made clear by the section's introductory clause.").

14.     Consistent with that statutory structure, courts recognize that disclosure under section 704(a)(7) must be assessed in light of the trustee's fiduciary obligations and other legal constraints.  As *Pearlstein* explains, the trustee's disclosure obligations "should be informed by the trustee's fiduciary duties."  2022 WL 1492236, at *2.  Courts therefore "recognize the need to protect the trustee's attorney-client privilege, to provide appropriate safeguards for proprietary and

---

[5] For purposes of this Opposition, BI 68 does not contest that Balfour is a creditor of the Debtor and is therefore a party in interest.

confidential information, [and] to prevent the trustee from violating other laws or agreements." *Id*.

These considerations bear directly on the scope of information a trustee may be required to disclose

under section 704(a)(7).

15.     Critically, those considerations go to whether disclosure is required in the first

instance.   Section 704(a)(7) does not ask whether information can be disclosed subject to

conditions, but whether it falls within the category of information the statute reaches at all.  The

fact that the Trustee obtained materials from BI 68 pursuant to a confidentiality agreement thus

reflects the type of fiduciary and legal constraints *Pearlstein* recognizes as relevant to defining the

scope of the Trustee's disclosure obligations, including the need to avoid undermining third-party

cooperation in trustee investigations.

16.     The *Refco* court articulated the same principle in the analogous context of creditors'

committees, holding that a committee should not be required to "forward all of the raw data it

receives and considers," as if it were merely "a virtual information bank for its constituents."  336

B.R.  at  193.   Rather, because committees—and trustees—routinely receive commercially

sensitive, proprietary, or confidential information from third parties, fiduciary duties of loyalty and

care may require such information to be held in confidence.  *Id*. at 193–194.  As *Refco* explained,

absent such limits, communications with third parties would be "improperly curtailed," and estate

value could be harmed.[6] *Id*.

---

[6] *Refco* further explained that it is important to keep fiduciary functions "in mind when sorting out the
circumstances under which a creditors' committee should not be required to make information available to
its constituents."  336 B.R. at 197.  When it comes to sensitive information, "[i]t has frequently been held
that committee members' fiduciary duties of loyalty and care to the unsecured creditor body require such
information to be held in confidence.  Otherwise, communications between the committee and third parties
and among committee members themselves would be improperly curtailed, or the debtor might be harmed
with a resulting decline in the creditors' recovery."  *Id*. at 196 (citing *In re Swolsky,* 55 B.R. 144, 146 (Bankr.
N.D. Ohio 1985); *In re Johns-Manville Corp.,* 26 B.R. 919, 926 (Bankr. S.D.N.Y. 1983); *In re Daig
Corp.,* 17 B.R. 41, 42 (Bankr. D. Minn. 1981)); *see also* 7 Collier on Bankruptcy ¶ 1103.05[2][a].

**B.  Balfour's Requested Materials Fall Outside the Scope of Section 704(a)(7)**

17.     Balfour anticipates that "BI 68 may attempt to argue that this Court should look []
to *In re Walters,* 135 B.R. 256 [sic] (Bankr. C.D. Cal. 1992)," and contends that this Court should
instead disregard that decision.  BI 68 does rely on *Walters* because it squarely defines the scope
of information that may be compelled under section 704(a)(7).  Critically, section 704(a)(7) limits
disclosure to information concerning "estate administration."  *Id*. at 258.  That phrase is not
surplusage.  Courts interpreting the statute have consistently held that it does not compel disclosure
of all materials in a trustee's possession, particularly when the information was developed for
investigation or adversary purposes rather than for administering estate assets.

18.     In *Walters*, the court denied a creditor's motion seeking access to audit materials
prepared by the trustee's professionals in connection with an adversary proceeding.  The court held
that such materials were not "information concerning the estate and the estate's administration"
within the meaning of section 704(a)(7).  *Id*. at 258.  The court explained that section 704(a)(7)
requires disclosure of information "regarding the financial condition and continued operation of
the debtor's business," which permits creditors to assess whether the trustee is protecting their
interests in estate property.  *Id*.

19.     Applying that distinction, the court held that audit materials developed by the
trustee's accountants "to assist Trustee in determining the extent of the facts underlying his causes
of action" fell outside the statute's scope because "[c]reditors do not need such information to
decide whether their interests are being protected."  *Id*. at 258.  By contrast, information concerning
routine asset collection, such as accounts receivable, may qualify as estate-administration
information.  *Id*. at 259.

20.     Courts continue to apply this limitation.  In *In re Munce*, the court rejected a creditor's claim that the trustee breached section 704(a)(7) by refusing to disclose valuation materials and documents prepared by the trustee's CPA, explaining that the statute "does not require a trustee to disclose all information to every creditor."  No. 13–45569, 2017 WL 4564706, at *6 (Bankr. W.D. Wash.); *see also In re Sports Accessories, Inc.*, 34 B.R. 80, 82 (Bankr. D. Md. 1983) (ordering disclosure of information directly bearing on estate administration, including accounts receivable, matters referred to counsel for collection, and accounts trustee elected not to pursue).

21.     Balfour attempts to distinguish *Walters* by asserting that its holding rested "largely upon a determination that the information sought was privileged or constituted work product."  Motion to Compel, at 5.  That is incorrect.  The *Walters* court expressly denied the motion because the requested materials did not constitute information "concerning the estate and the estate's administration" within the meaning of section 704(a)(7).  136 B.R. at 259.  Only after reaching that conclusion did the court explain that it "need not address Trustee's contentions regarding privilege and work product." *Id*. at 259–260.  The scope determination was dispositive.

22.     Taken together, *Walters*, *Munce*, and cases applying section 704(a)(7) establish a threshold inquiry that Balfour's Motion to Compel never clears: whether the requested materials constitute information "concerning the estate and the estate's administration" at all.  Where, as here, the materials were developed for investigative or litigation purposes and are not necessary for creditors to assess whether the trustee is administering estate assets, section 704(a)(7) does not compel disclosure.  Only if the information falls within the statute's scope does the Court reach questions of balancing, protective orders, or trustee discretion.  Because Balfour's request seeks

materials outside the scope permitted by *Walters*, its reliance on *Pearlstein* cannot salvage its motion.

### C. Pearlstein Does Not Authorize the Disclosure Balfour Seeks

23.     Balfour urges the Court to look past *Walters* and instead follow *In re Pearlstein*, where the court required the trustee to provide information to a creditor under section 704(a)(7). 2022 WL 1492236, at *4.  But *Pearlstein* does not announce a rule of automatic disclosure.  To the contrary, the court expressly reaffirmed that "[t]he trustee's duty to provide information is not, however, unlimited," and emphasized that a trustee's disclosure obligations must be "informed by the trustee's fiduciary duties."  *Id*. at *2.  *Pearlstein* thus begins from the same statutory premise as *Walters* and *Refco*: disclosure under section 704(a)(7) is subject to judicial control, particularly when fiduciary obligations and the need to preserve third-party cooperation are implicated.

24.     Critically, *Pearlstein* recognized that courts must "prevent the trustee from violating other laws or agreements" and must account for the trustee's fiduciary obligations when determining the scope of disclosure under section 704(a)(7).  *Id*.  Balfour concedes that the Trustee cited, as a basis for withholding, that the requested materials were obtained pursuant to a confidentiality agreement with BI 68, a non-debtor third party. Motion to Compel, at 4.  That fact places this case outside *Pearlstein*'s core holding.  *Pearlstein* addressed disclosure in a materially different context and did not consider whether compelled disclosure of materials provided by a non-debtor third party pursuant to a cooperation agreement would undermine trustees' ability to obtain candid cooperation in future investigations.

25.     *Pearlstein* also cautioned that courts may deny section 704(a)(7) requests when "the request for information is not made in good faith," including when a creditor seeks to obtain an improper advantage.  *Id*.  That concern is not hypothetical here.  Although Balfour characterizes

11

its demand as a routine request for information, its Demand Letter makes clear that it seeks to use section 704(a)(7) to revive a subpoena issued under Rule 2004 that this Court already quashed. Motion to Compel, Exhibit A ("Please note that my client reserves all rights upon review of these records to contest the adequacy of the production made by BI 68 in response to the subpoena initially issued by my client.").

26.     Section 704(a)(7) cannot be used as an end-run around discovery limits or adverse rulings—precisely the abuse *Walters* warned against when it rejected the notion that a creditor could reap "extravagant rewards" from its adversary's investigative efforts simply by invoking its creditor status.  136 B.R. at 259.  And while *Walters* makes clear that the existence of an adversarial relationship alone is not dispositive, courts properly consider whether a creditor is actively litigating against the estate or seeking a strategic advantage.  Here, the procedural history and Balfour's own words in its Demand Letter underscore that concern, as Balfour's request follows multiple failed discovery efforts in this and other courts, and its Demand Letter makes clear that Balfour's goal is simply to enforce its subpoena.  *See id*.; *In re Munce*, 2017 WL 4564706, at *6 ("[Section 704(a)(7)] does not require the Trustee to disclose all information to every creditor, especially a party actively litigating against the estate.").

27.     Moreover, Balfour mischaracterizes *Pearlstein* by suggesting that it involved disclosure of third-party information comparable to what is sought here.  Motion to Compel, at 5 ("Balfour is seeking information turned over to the Trustee by a third party which was the same information as sought in *Pearlstein.*").  It did not.  In *Pearlstein*, the creditor sought information concerning the debtors' financial affairs, including information the debtors had turned over, or were required to turn over, to the trustee, so that the creditor could evaluate estate administration decisions.  *See* Supplemental Brief of Creditor Re: Trustee Duties Under 11 U.S.C. § 704(a)(7) at

12

*3–4, *In re* Pearlstein, No. 17-32770-THP7, 2022 WL 1492236, at *2 (Bankr. D. Or. May 11, 2022) (seeking access to "Debtors' information" and disputing trustee's refusal to disclose debtor records).

28.     The circumstances in *Pearlstein* are materially different.  There, the court addressed disclosure of debtor financial information in the context of concealed estate assets and a proposed settlement of estate claims. 2022 WL 1492236, at *3–4.  This case involves none of those features. It concerns third-party materials provided under a confidentiality agreement, to allow the Trustee to investigate whether there are facts to support a speculative theory of litigation recovery by the Trustee against BI 68 being advanced by Balfour, while Balfour simultaneously engages in adversarial litigation against BI 68 in another court.  This is a transparent effort by Balfour to obtain documents to further its individual litigation interests; its demand is functionally disconnected from any concern as a creditor seeking to be furnished information regarding the estate's administration.  Section 704(a)(7) permits the Court to enter an order stopping this sort of behavior and it should do so.

## Conclusion

WHEREFORE, for the reasons set forth above and in BI 68's prior submissions, BI 68 respectfully requests this Court deny Balfour's Motion to Compel and otherwise protect the Trustee from any further demands by Balfour (or any other party in interest) to disclose documents and other information provided to the Trustee by BI 68 pursuant to a confidentiality undertaking.

13

Dated: March 16, 2026        **ALSTON & BIRD LLP**

*/s/ William S. Sugden*
William S. Sugden (Georgia Bar No. 690790)
Michael H. Shanlever (Georgia Bar No. 141292)
Arabella Okwara (Georgia Bar No. 542422)
Kennedy R. Bodnarek (Georgia Bar No. 623383)
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309
Phone: 404-881-7000
Fax: 404-881-7777
Email: will.sugden@alston.com
       mike.shanlever@alston.com
       arabella.okwara@alston.com
       kennedy.bodnarek@alston.com

*Counsel for BI 68, LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused to be served true and correct copies of the foregoing by filing such notice with the Court's CM/ECF system.

By: */s/ William S. Sugden*

William S. Sugden

15