**IT IS ORDERED as set forth below:**

**Date: May 27, 2026**

Sage M. Sigler

_____

**Sage M. Sigler**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re: | CASE NUMBER: |
| **NEWPORT 222 MITCHELL STREET, L.P.**, | **24-54060-SMS** |
| Debtor. | CHAPTER 7 |

**ORDER GRANTING IN PART AND DENYING**
**IN PART BALFOUR BEATTY CONSTRUCTION, LLC'S**
**MOTION TO COMPEL TRUSTEE TO PRODUCE INFORMATION**

Invoking 11 U.S.C. § 704(a)(7), a creditor of the bankruptcy estate seeks to compel the chapter 7 trustee to furnish information voluntarily provided to the trustee by another creditor on a confidential basis. The providing creditor opposes the request. The trustee submits to the discretion of the Court but generally favors a narrow reading of the statute. The specific question before the Court is whether the information requested concerns the estate and the estate's administration as contemplated by § 704(a)(7). For the reasons explained on the record at the

March 30, 2026 hearing and supplemented below, the Court will require the trustee to furnish certain materials to the requesting creditor, but will otherwise deny the request.

## I.      Background

Newport 222 Mitchell Street, L.P. ("Debtor") owned a parcel of real property located at 222 Mitchell Street, Atlanta, Georgia (the "Property") that it intended to develop. BI 68, LLC ("BI 68") was Debtor's secured lender, and Debtor hired Balfour Beatty Construction, LLC ("Balfour") as a contractor. Debtor defaulted on its obligations to BI 68, and BI 68 foreclosed on the Property in March 2024. After the foreclosure sale, Debtor filed this chapter 7 case on April 22, 2024, to deal with its remaining assets and liabilities. S. Gregory Hays was appointed the chapter 7 trustee (the "Trustee") of Debtor's bankruptcy estate (the "Estate").

In July 2024, at Balfour's request (Doc. 22), the Court modified the automatic stay (Doc. 25) to the extent necessary to allow Balfour to proceed with litigation (the "Gwinnett County Litigation") against Debtor and other entities (not including BI 68) to foreclose on its mechanics' lien on the Property, which was not property of the Estate given that it was foreclosed prepetition. Balfour sought clarification of that order on an emergency basis (Doc. 28), and the Court entered an order in October 2024 expressly allowing Balfour to proceed with the Gwinnett County Litigation to determine the amount due to Balfour and to liquidate its breach of contract claim in conjunction with its mechanics' lien foreclosure rights (Doc. 32). In March 2025, the Court granted Balfour's request to pursue discovery from Debtor in this case under Fed. R. Bankr. P. ("Bankruptcy Rule") 2004 without any opposition (Doc. 35).

Two months later in May 2025, Balfour sought discovery from BI 68 under Bankruptcy Rule 2004 for the asserted purpose of investigating potential claims on behalf of the Estate arising out of BI 68's prepetition foreclosure of the Property (Doc. 37). The Court entered a routine *ex*

*parte* order allowing Balfour's 2004 discovery to proceed (the "BI 68 Discovery Order," Doc. 40), and BI 68 filed a motion to quash in response (Doc. 46).

The Court held a hearing to the resolve the dispute on July 30, 2025, at which counsel for Balfour, BI 68, and the Trustee appeared. The Trustee indicated that he would investigate any potential claims of the Estate arising out of Debtor's dealings with BI 68 and would seek documents and information from both BI 68 and Balfour regarding those claims. At the parties' request, the Court continued the hearing to allow the Trustee to conclude his investigation and held BI 68's motion to quash in abeyance.

As the Trustee continued his investigation, he kept the Court apprised of his progress at periodic status conferences. At a February 26, 2026 hearing, the Trustee announced that he had concluded his investigation and had not identified any viable claims on behalf of the Estate arising out of the prepetition Property foreclosure, or otherwise against BI 68. The Court thus granted BI 68's motion to quash on the bases that the potential claims Balfour sought to investigate belong to the Estate and that the Trustee had fully investigated those potential claims and determined there were no viable claims to pursue. Thus, there was no bankruptcy purpose to be served by Balfour's desired discovery from BI 68.[1]

With the knowledge that the Trustee was not going to pursue Balfour's alleged claims, Balfour issued a demand to the Trustee on February 25, 2026, to provide Balfour all documents and information received from BI 68 pursuant to § 704(a)(7) (the "Requested Discovery").[2] After the Trustee did not comply, Balfour filed a motion to compel the Trustee's production, and BI 68 filed a response in opposition. The Trustee did not file a response to Balfour's motion to compel

---

[1] Nothing in the Court's order granting BI 68's motion to quash restricts or otherwise affects Balfour's ability to seek discovery from BI 68 in any litigation outside of Debtor's bankruptcy case.

[2] This issue was raised at the February 26, 2026 hearing, but was not properly before the Court for a ruling at that time.

and has not taken an express position on the issue, but he raised a concern that BI 68 provided the Requested Discovery under a confidentiality agreement that he is not inclined to breach absent a court order.

With the issue briefed by Balfour in its *Motion to Compel Trustee to Produce Information* (the "Motion to Compel," Doc. 61) and BI 68 in its response in opposition (Doc. 64), the Court held a hearing on March 30, 2026, and heard oral argument from counsel for Balfour, BI 68, and the Trustee. At the conclusion of the hearing, the Court ruled that the Trustee must provide Balfour with bank statements received from BI 68 that relate to Debtor's financial condition (the "Bank Statements"), but otherwise denied Balfour's Motion to Compel.[3] The Court informed the parties that this Order would follow, supplementing the Court's oral ruling.

## II.     Analysis

Although Balfour and BI 68 have an extensive history and assert various claims and defenses against each other in other forums, the issue here is narrow. The Court must determine whether § 704(a)(7) requires the Trustee to give Balfour the Requested Discovery, which BI 68 provided in connection with the Trustee's investigation into ultimately nonviable claims against BI 68. In other words, does § 704(a)(7) require a trustee to provide one creditor documents and information obtained from another creditor during the trustee's investigation into possible claims of the bankruptcy estate? For several reasons, it does not.

Section 704(a)(7) provides simply: "The trustee shall[,] unless the court orders otherwise, furnish such information concerning the estate and the estate's administration as is requested by a party in interest." No one disputes that Balfour is a party in interest. The question is whether the

---

[3] At the March 30 hearing, the Trustee identified bank statements of Debtor and related entities as a category of documents provided by BI 68 to the Trustee. BI 68 indicated that it did not oppose the turnover of such bank statements to Balfour.

information Balfour seeks "concern[s] the estate and the estate's administration" within the scope of § 704(a)(7).

In support of its position that § 704(a)(7) requires the Trustee to furnish the Requested Discovery, Balfour relies heavily on *In re Pearlstein*, 17-32770-THP7, 2022 WL 1492236 (Bankr. D. Or. May 11, 2022). There, joint individual debtors disclosed no unexempt assets in their petition and received a discharge with no distribution to creditors. *Pearlstein*, 2022 WL 1492236, at *1. Nearly two years later, a creditor sought to reopen the case to allow a chapter 7 trustee to investigate and liquidate undisclosed assets of the debtors' bankruptcy estate. *Id.* The court reopened the case, and a chapter 7 trustee investigated the estate's claims for nearly two more years before concluding that the estate had assets available for distribution to creditors. *Id.* Soon after, the trustee sought to settle the estate's claims against the debtor wife.[4] A creditor of the debtor husband objected to the settlement and sought the trustee's records of its investigation into the debtors' assets under § 704(a)(7) to evaluate the proposed settlement and potential alternatives. *Id.* The trustee opposed production for several reasons, but the court nevertheless ordered the trustee to produce the documents. *Id.* at * 3-4.

From this Court's perspective, the most important part of the *Pearlstein* court's § 704(a)(7) analysis—and what is notably different here—is the type of information sought. In *Pearlstein*, the creditor sought the *debtors'* financial information from the trustee's file. The trustee argued that she had a duty to protect the privacy of the debtors' financial information, but the court disagreed, noting that bankruptcy is a public process and includes a myriad of requirements for debtors to provide their financial information, all of which becomes public record. *Id.* But Balfour's Requested Discovery goes far beyond just Debtor's financial information. Balfour asserts that it

---

[4] Debtor husband was deceased at the time of the trustee's settlement motion.

wants to review the Trustee's file to, effectively, ensure that the Trustee made the right decision in not pursuing claims relating to BI 68's foreclosure. Balfour made it clear on the record it was not asserting the Trustee failed to perform his duties. Instead, Balfour is concerned that the Trustee "may not have had sufficient background knowledge to fully evaluate the information produced by BI 68 to ensure that all relevant documentation was produced." Motion to Compel at 3.

Both the Trustee and his counsel have extensive experience not only administering chapter 7 bankruptcy estates, but investigating, evaluating, and prosecuting all manner of claims on behalf of bankruptcy estates against misbehaving debtors and others. The nature of the claims Balfour asserts the Trustee should pursue are not so novel or complex that the Trustee and his counsel would be unable or ill-equipped to analyze them, or would not know what documents to request or whether they are missing information critical for their investigation.[5] The Trustee and his counsel conducted a thorough investigation over the course of several months involving multiple meetings with Balfour, BI 68, and their attorneys before making his decision. Balfour had ample opportunity to provide the Trustee any background knowledge it felt relevant to the Trustee's investigation, but the Trustee remained unconvinced that the estate had any viable claim against BI 68. Whatever Balfour's motives, this Court is not convinced that a desire to investigate the prudence of a trustee's decision not to pursue claims against a third party is an appropriate basis to require a trustee to produce his files.

In this Court's view, the threshold issue in determining whether a trustee must provide information to a requesting party under § 704(a)(7) is the nature of the information sought—not why the creditor wants it. In *Pearlstein*, the creditor sought the financial information of the debtors.

---

[5] *See, e.g.*, Adversary Proceeding No. 12-05238-wlh, in which counsel for the Trustee recovered $100,000 for a bankruptcy estate on a claim arising out of a foreclosure sale.

The court correctly recognized that debtors lack privacy rights to their financial information, which becomes part of the public record upon the filing of a bankruptcy case. *See* 11 U.S.C. § 107(a). Information about a debtor's assets, such as a bank statement, is clearly information concerning the estate and the estate's administration within the scope of § 704(a)(7). But Balfour does not seek just bank statements, it seeks all documents BI 68 provided in connection with the Trustee's investigation, including a slide deck and other documents created by BI 68 and its counsel to explain BI 68's side of the story.

The Court believes a different case better addresses this scenario. In *In re Walters*, 136 B.R. 256 (Bankr. C.D. Cal. 1992), creditors challenging a debtor's discharge under § 727 argued that § 704(a)(7) required the trustee to provide the creditors information that the trustee's accountants developed while investigating and prosecuting fraudulent transfer actions against the debtor's wife, which the court defined as the "audit materials." The trustee argued that the audit materials were not the kind of information concerning the estate and the estate's administration that a trustee must provide to parties in interest and therefore do not fall within the ambit of § 704(a)(7). The *Walters* court agreed and said that it could not accept the argument that the audit materials "constitute 'information concerning the estate and the estate's administration' either under the plain language of the section, the broad context of the Bankruptcy Code generally, or under the specific facts of this case." *Id.* at 257-58 (quoting former 11 U.S.C. § 704(7), now § 704(a)(7)).

The *Walters* court acknowledged that cases interpreting § 704(a)(7) are few—which still holds true over 30 years later—but determined that "information developed by the trustee's professionals for the prosecution of an adversary proceeding is not 'information concerning the estate and the estate's administration' as contemplated by [§ 704(a)(7)]." *Walters*, 136 B.R. at 258. In so deciding, the *Walters* court examined the case of *In re Sports Accessories, Inc.*, 34 B.R. 80

(Bankr. D. Md. 1983), where a creditor sought information to determine what, if anything, a trustee had done to collect a large account receivable after months of inactivity. The *Sports Accessories* court ordered the turnover of the trustee's records, and the *Walters* court agreed that "whether and to what extent a chapter 7 trustee has acted to collect considerable accounts receivable for distribution to creditors constitutes 'information concerning the estate and the estate's administration' under [§ 704(a)(7)]." *Walters*, 136 B.R. at 259. But the *Walters* court was unconvinced that the principles underlying the *Sports Accessories* decision supported the creditors' request for the trustee's audit materials. *See id.* ("The important distinction between *Sports Accessories* and this case, however, is that the [audit materials] are not the sort of information encompassed by [§ 704(a)(7)].").

This Court likens the Requested Discovery, information the Trustee used to analyze whether to bring an adversary proceeding against BI 68, to the information the creditor sought in *Walters*. That is, information developed for the prosecution of an adversary proceeding. This Court agrees with the *Walters* court that such information does not concern the estate or the estate's administration as contemplated by § 704(a)(7). Other than the Bank Statements, the Requested Discovery belongs to a third party and was collected by the Trustee solely for the purpose of determining whether to pursue claims on behalf of the Estate. The Trustee chose not to pursue those claims and Balfour, presumably, is displeased with that decision. But a creditor's discontent with a trustee's course of action does not warrant an overbroad application of § 704(a)(7).

If the Requested Discovery fell within the scope of § 704(a)(7), the Court may need to evaluate why Balfour wants the Requested Discovery or what Balfour would do with it. But the threshold inquiry is whether the Requested Discovery is "information concerning the estate and

the estate's administration" and, for the reasons stated on the record at the March 30, 2026 hearing and supplemented in this Order, other than the Bank Statements, it is not. Accordingly, it is

**ORDERED** that the Motion to Compel (Doc. 61) is **GRANTED** to the extent that the Trustee shall provide Balfour and its counsel the Bank Statements; it is further

**ORDERED** that the Motion to Compel is otherwise **DENIED**.

**[END OF DOCUMENT]**

**Distribution List:**

Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell Jr., LLC
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305

Michael F. Holbein
Smith, Gambrell & Russell, LLP
1105 West Peachtree St., N.E.
Suite 1000
Atlanta, GA 30309

William S. Sugden
Alston & Bird LLP
One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309

S. Gregory Hays, Trustee
Hays Financial Consulting, LLC
2964 Peachtree Road, Suite 555
Atlanta, GA 30305

Michael Barger
Rountree Leitman Klein & Geer, LLC
Century Plaza I, 2987 Clairmont Rd., Ste. 350
Atlanta, Georgia 30329